UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| In re | Case No. 09-00249 |
|---|---|
| JOY P. GASTON, | Chapter 13 |
| Debtor. | Re: Docket No. 35 |

# MEMORANDUM OF DECISION ON MOTION FOR SANCTIONS FOR AUTOMATIC STAY AND DISCHARGE VIOLATIONS

Joy Gaston, the debtor in this chapter 13 case, was the co-owner (along with her life partner, Lorraine Sablas) of real property on Waikala Street in Maui. Ms. Gaston's plan provides for the surrender of the Waikala Street property in full satisfaction of the secured claims against that property. No one, including the mortgagee of the Waikala Street property, objected to the plan, and the court confirmed it on April 8, 2009 (docket no. 14). Mostly because only one creditor filed a timely proof of claim (see docket no. 16), Ms. Gaston was able to complete her plan very quickly and pay the only unsecured claim in full. Ms. Gaston received her discharge on December 8, 2009 (docket no. 25).

Despite confirmation of the plan, surrender of the property, and entry of the discharge, the servicer of the mortgage, BAC Home Loans Servicing, L.P., a subsidiary of Bank of America, N.A. ("BAC Home Loans"), repeatedly contacted

Ms. Gaston to demand payment of the mortgage debt and performance of her other obligations under the mortgage (including the maintenance of insurance). These contacts were both written and oral. Ms. Gaston and her attorney repeatedly told BAC Home Loans, both by telephone and in writing, that Ms. Gaston had filed a bankruptcy case, surrendered the property, and received her discharge, but BAC Home Loans nevertheless continued, and continues to this day, to contact Ms. Gaston.

Ms. Gaston's motion seeks damages from BAC Home Loans for its violations of the automatic stay and the discharge injunction. Ms. Gaston properly served the motion on BAC Home Loans. Ms. Gaston also gave notice of the motion to the attorney named as BAC Home Loans' representative in the nonjudicial foreclosure proceedings affecting the Waikala Street property. BAC Home Loans had additional notice of Ms. Gaston's motion because Ms. Sablas, Ms. Gaston's life partner and co-owner, filed a similar motion in her own chapter 13 case. BAC Home Loans appeared through counsel in response to that motion; although the initial hearings on Ms. Sablas' and Ms. Gaston's motion were held concurrently, counsel only appeared in the Sablas matter. (Later, BAC Home Loans settled with Ms. Sablas.)

Although BAC Home Loans was properly served, it never responded to the

motion. Accordingly, I ruled that BAC Home Loans' liability was determined by default[1] and held an evidentiary hearing to establish Ms. Gaston's damages.

BAC Home Loans violated both the automatic stay and the discharge injunction. Because the remedies available for these violations differ, the two sets of violations must be analyzed separately.

For willful violations of the automatic stay, an individual debtor "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. §362(k)(1).

"Actual damages" may include damages for emotional distress, if the debtor (1) suffered significant harm, (2) clearly establishes the significant harm, and (3) demonstrates a causal connection between that significant harm and the violation of the automatic stay. Dawson v. Wash. Mut. Bank (In re Dawson), 390 F.3d 1139, 1149 (9th Cir. 2004). "Fleeting or trivial anxiety or distress" that is medically insignificant does not support an award. Id.

The attorneys' fees and costs recoverable under section 362(k)(1) include only those incurred to prevent violations of the stay, not to prosecute an action to

---

[1] Even ignoring BAC Home Loans' default, there is ample evidence that BAC Home Loans willfully violated the automatic stay and the discharge injunction. It had notice of the bankruptcy filing and continued to demand payment nevertheless. In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989).

3

U.S. Bankruptcy Court - Hawaii   #09-00249   Dkt # 57   Filed 04/14/11   Page 3 of 9

recover damages for the violations. Sternberg v. Johnston, 595 F.3d 937, 945-48 (9th Cir. 2010).

A bankruptcy court has discretion in granting or denying punitive damages. In re Roberts, 175 B.R. 339, 344 (B.A.P. 9th Cir. 1994). For an award of punitive damages, the conduct must be malicious, wanton or oppressive, or the violator engaged in "egregious, intentional misconduct." In re Copeland, 441 B.R. 352, 370 (Bankr. W.D. Wash. 2010) (citing In re Stinson, 295 B.R. 109, 122 (B.A.P. 9th Cir. 2003), aff'd in part, rev'd in part on other grounds, 128 Fed. Appx. 30 (9th Cir. 2005) (unpublished)).

The bankruptcy discharge "operates as an injunction" against most efforts to collect debts "as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). An intentional violation of the discharge injunction is a civil contempt and sanctionable under section 105(a) of the Bankruptcy Code. The debtor may recover compensatory damages and attorneys' fees. Walls v. Wells Fargo Bank, 276 F.3d 502, 507 (9th Cir. 2002). Although the Dawson case holds only that damages for emotional distress may be awarded for violations of the automatic stay, the court's reasoning applies equally to violations of the discharge injunction.

As Walls noted, the court may award attorneys' fees in an action for

4

violation of the discharge injunction. Sternberg does not limit the recovery; the Sternberg court said that it was not considering the civil contempt authority of the court and that its opinion should not be construed to limit the availability of contempt sanctions, including attorneys' fees, under such authority. Sternberg, 595 F.3d at 946 n.3.

The bankruptcy court lacks the power to award punitive damages (with the possible exception of "'relatively mild' non-compensatory fines") under section 105(a) for a violation of the discharge. In re Dryer, 322 F.3d 1178, 1192-93 (9th Cir. 2003).

The available remedies also differ because the automatic stay prohibits certain conduct that the discharge injunction permits. The automatic stay enjoins virtually all collection activity, including the enforcement of liens, 11 U.S.C. § 362(a)(4). The discharge bars only efforts to collect debts "as a personal liability of the debtor," which means that secured creditors can foreclose their liens after the discharge is entered. 11 U.S.C. § 524(a)(2); see also Johnson v. Home State Bank, 501 U.S. 78, 83 (1991) (explaining that a discharge extinguishes only the personal liability of the debtor, and that a creditor's right to foreclose on a mortgage securing the debt survives or passes through the bankruptcy).

5

This distinction is important in this case because state law requires the creditor to give certain notices to the debtor in order to enforce its nondischarged lien rights. It would be illogical to hold that the discharge does not bar lien enforcement, but prohibits the creditor from giving the notices which lien enforcement requires.

Ms. Gaston testified that she did not expect to receive any communications from BAC Home Loans after she surrendered the property because she no longer owned it. This is a misimpression. The surrender of collateral under the plan probably does not eliminate the mortgagee's need to foreclose its mortgage under state law. The Bankruptcy Code does not define "surrender"; it does not tell us what (if anything) the debtor must do to accomplish a surrender and what effect (if any) surrender has on the title to the property or lien rights in the property. Because of this uncertainty (which I need not resolve in this case), secured creditors are probably entitled to foreclose on the surrendered property in order to clear title, and to give the debtor whatever notices state law requires in order to accomplish the foreclosure.

Therefore, some of BAC Home Loans' communications with Ms. Gaston may not have violated the discharge injunction. For example, a sheriff apparently delivered to Ms. Gaston a notice of intent to foreclose which Hawaii's nonjudicial

6

foreclosure statute requires. I need not identify with precision any permissible communications because the vast majority of BAC Home Loans' communications with Ms. Gaston were plainly unnecessary for lien enforcement. For example, BAC Home Loans repeatedly called Ms. Gaston on the telephone; Hawaii's foreclosure laws do not require BAC Home Loans to communicate orally with Ms. Gaston. Similarly, BAC Home Loans repeatedly demanded that Ms. Gaston insure the property and notified her of its intent to obtain "force placed" insurance; BAC Home Loans did not need to give these notices to Ms. Gaston in order to enforce its lien rights.

Ms. Gaston presented unrebutted medical testimony and her own testimony that the stress she suffered due to BAC Home Loans' violations of the automatic stay and the discharge injunction caused a serious aggravation of her rheumatoid arthritis, an autoimmune disorder. Ms. Gaston, her doctor, and Ms. Sablas all noticed that Ms. Gaston suffered flareups of her arthritis whenever BAC Home Loans contacted her. As a result, her health deteriorated severely, she suffered a significant loss of mobility, she lost the ability to engage in her favorite physical activities such as surfing and hiking, she had to retire from her job as a teacher eighteen months earlier than she had planned, and she incurred substantial medical expenses, including the cost of knee replacement surgery.

7

Based on the evidence, I find that Ms. Gaston suffered actual damages as a direct and proximate result of BAC Home Loans' willful violations of the automatic stay and the discharge injunction in the following amounts:

| | |
|---|---:|
| Out of pocket medical expenses | $11,122.48 |
| Debtor's out of pocket expenses for postage, copying, and travel to attend evidentiary hearing | 464.83 |
| Wages lost due to early retirement (less retirement benefits received) | 48,720.00 |
| Present value (2% discount rate) of reduction of retirement benefits due to early retirement | 51,473.53 |
| Reasonable attorneys' fees, including general excise tax | $20,937.57 |
| SUBTOTAL | $132,718.41 |

In addition, Ms. Gaston is entitled to recover damages for emotional distress under Dawson. She has clearly established that she suffered significant harm due to the severe and permanent aggravation of her autoimmune disorder and that BAC Home Loans' violations caused this aggravation. Her emotional distress was compounded by the fact that, because of her physical limitations, she had to give up the teaching job and the physical and outdoor activities that she loved. Her relationship with her partner was also affected. Before her condition worsened, Ms. Gaston had been more physically active than Ms. Sablas, but now Ms. Gaston

8

depends on Ms. Sablas for such basics as bathing and opening jars. I find that $50,000.00 is the minimum amount necessary to compensate Ms. Gaston for her emotional distress and loss of enjoyment of life.

I will not award punitive damages in this case for two reasons.

First, most of the violations occurred after the automatic stay terminated and while the discharge was in effect. Punitive damages are not available for violations of the discharge.

Second, BAC Home Loans' conduct was illegal and unexcused, but not outrageous in and of itself. At bottom, BAC Home Loans communicated with Ms. Gaston when it should not have done so. Ms. Gaston suffered serious harm, not because BAC Home Loans' conduct was inherently outrageous, but rather because Ms. Gaston's medical condition made her more susceptible to stress than most people. Ms. Gaston's unusual vulnerability does not warrant any diminution of her recovery for her actual damages, but it does undercut her case for punitive damages. It is right and proper to require a defendant to provide full compensation to a plaintiff, even one who is unusually susceptible to harm; it is not proper, however, to impose punitive damages in such a situation.

Therefore, a separate final judgment shall enter in favor of Ms. Gaston and against BAC Home Loans in the amount of $182,718.41 plus costs.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 04/14/2011